MARY E. GRADY[1] *VS.* ZONING BOARD OF APPEALS OF PEABODY
& others.[2]

Suffolk. March 5, 2013. - July 10, 2013.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, GANTS, DUFFLY, & LENK, JJ.

*Zoning,* Variance, Lapse of variance.

This court concluded that in circumstances in which the holders of a variance
were issued a building permit and took substantial steps in reliance on the
otherwise valid variance within the one-year period prescribed by G. L.
c. 40A, § 10, but recorded the variance eleven days after the one-year
lapse period, the variance had nonetheless taken effect under G. L. c. 40A,
§ 11, given the absence of any prejudice caused by the de minimis delay
to any abutters or potential purchasers, and given the holders' substantial
reliance on the variance. [728-732]

CIVIL ACTION commenced in the Land Court Department on
December 28, 2009.

The case was heard by *Keith C. Long,* J.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*William R. DiMento* (*Debora T. Newman* with him) for the
plaintiff.

*Louis J. Muggeo* for Arthur Stefanidis & another.

DUFFLY, J. This case presents the question whether a properly-
granted zoning variance may be deemed to have "taken effect"
pursuant to G. L. c. 40A, § 11, where it was not recorded with
the registry of deeds within the one-year lapse period set forth
in G. L. c. 40A, § 10, but was recorded eleven days thereafter,
and where the holders have substantially relied upon it. The
question whether a variance will take effect if the holders have
substantially relied upon it was left open in *Cornell* v. *Board of*

---

[1]Individually and as trustee of the Central Gardens Condominium Trust.

[2]Arthur Stefanidis and Irene Stefanidis, as trustees of A & I Trust; and
building commissioner of the city of Peabody.

*Appeals of Dracut*, 453 Mass. 888, 891 n.7 (2009) (*Cornell*). In the unusual circumstances of this case, we conclude that the variance has taken effect, and has not lapsed.

*Background.* We recite the facts as found by a Land Court judge following a jury-waived trial.[3] Arthur and Irene Stefanidis, trustees of the A & I Trust, owned a single large lot in the city of Peabody (city), on which there was an existing structure. They divided this parcel into Lot A, the front portion of the parcel containing the structure, and Lot B, the undeveloped portion at the rear of the parcel that did not have street frontage. They reserved an easement in favor of Lot B over the driveway and parking area of Lot A. They then deeded the lot to the Central Gardens Condominium Trust and converted the building on Lot A into three condominium units. A & I Trust retained Lot B after the condominium trust declined to purchase it.

The Stefanidises subsequently planned to build a two-family house on Lot B, and applied for a variance from the zoning board of appeals of Peabody (board) to allow them to build despite the lack of street frontage. The variance was approved, with conditions requiring the Stefanidises to, inter alia, comply with setback and height restrictions; build only one structure; prepare a drainage plan; and, if necessary, obtain a revised easement over Lot A. The variance was filed in the city clerk's office on June 23, 2008.

The plaintiff, Mary E. Grady, serves as trustee of the Central Gardens Condominium Trust and lives in one of the units on Lot A. Grady makes no claim that she did not receive notice of the Stefanidises' variance application as required by G. L. c. 40A;[4] however, neither she nor any other abutter appealed from the decision of the board granting the variance. On July 22, the city clerk's office issued to the Stefanidises a certification stating that the grant of the variance had not been appealed.

The decision granting the variance contained notice to the

---

[3]The parties have not challenged the judge's factual findings.

[4]General Laws c. 40A, § 10, requires a permit-granting authority to hold a public hearing on any application for a variance and to give notice "by publication and posting" and "by mailing to all parties in interest." Parties in interest include "abutters, owners of land directly opposite on any public or private street or way, and abutters to the abutters within three hundred feet of the property line of the petitioner." G. L. c. 40A, § 11.

recipients that they were responsible for recording the decision in the Essex County registry of deeds, and stated that proof of recording had to be presented before the city building commissioner would issue a building permit.[5] The decision specified also that "[t]his variance as granted is applicable for one (1) year only." The Stefanidises nonetheless failed to record the variance; the Land Court judge found that they simply forgot to do so. The Stefanidises applied for a building permit from the city building commissioner without submitting proof of recording. On February 24, 2009, a building permit issued to the Stefanidises to build a "new duplex [with] 3 bedrooms each." Between February 24 and June 15, 2009, the Stefanidises hired a general contractor and, at the city's request, a supervising architect who was to prepare periodic reports for the city.[6] As the judge found, "issuance of the building permit was relied upon to obtain [a construction loan secured by a mortgage on Lot B], to incur the personal financial obligation to repay that loan, and to commence construction activities." The Stefanidises drew significant amounts from the loan to fund construction activities, and in June, 2009, they began to clear and prepare the site.

On June 29, 2009, approximately one week after the one-year anniversary of the grant of the Stefanidises' variance, Grady made a written request to the building commissioner that he revoke the building permit on the ground that the Stefanidises had failed to record the variance within one year, see G. L. c. 40A, § 10,[7] and thus that it had not become effective. See G. L. c. 40A, § 11 (requiring variance be recorded before it can "take effect").[8] Notified by the building commissioner, the

---

[5]The requirement that an applicant present a recorded variance in order to obtain a building permit appears to be an administrative requirement of the city of Peabody (city). It is not reflected in Massachusetts statutory law, and neither party has identified an applicable city ordinance mandating the recording of a variance prior to issuance of a related building permit.

[6]The Stefanidises had already hired a surveyor and an architect before being issued the building permit.

[7]General Laws c. 40A, § 10, provides in relevant part:

"If the rights authorized by a variance are not exercised within one year of the date of grant of such variance such rights shall lapse . . . ."

[8]General Laws c. 40A, § 11, provides, in relevant part:

"No variance, or any extension, modification or renewal thereof,

Stefanidises recorded the variance on July 3, 2009, eleven days after the expiration of the one-year lapse period set forth in G. L. c. 40A, § 10.

The building commissioner denied Grady's request on the grounds that the "rights authorized by the variance have been exercised within one year"; work had commenced pursuant to a building permit; and the Stefanidises had complied with the conditions specified in the variance. On August 26, 2009, a Superior Court judge denied Grady's motion for a temporary injunction to halt work on the site, noting that Grady had not yet exhausted her administrative appeals. On December 10, 2009, after a hearing, the board upheld the building commissioner's denial of the request to revoke the building permit,[9] and Grady thereafter filed a complaint in the Land Court pursuant to G. L. c. 40A, § 17.

Following a jury-waived trial, a judge of the Land Court determined that the variance had not lapsed because the Stefanidises had taken substantial steps in reliance upon it, and had recorded it within a short period of time after the expiration of the lapse period. Grady appealed to the Appeals Court, and we transferred the case to this court on our own motion.

*Standards of review.* In reviewing the decision of a municipal board under G. L. c. 40A, the Land Court "shall hear all evidence pertinent to the authority of the board or special permit granting authority and determine the facts, and, upon the facts as so determined, annul such decision . . . or make such other decree as justice and equity may require." G. L. c. 40A, § 17. On appellate review, we defer to the factual findings of the trial judge unless they are clearly erroneous. *Wendy's Old Fashioned*

---

shall take effect until a copy of the decision bearing the certification of the city or town clerk that twenty days have elapsed after the decision has been filed in the office of the city or town clerk and no appeal has been filed . . . is recorded in the registry of deeds for the county and district in which the land is located and indexed in the grantor index under the name of the owner of record . . . ."

[9] In its review of the building commissioner's decision, the zoning board of appeals of Peabody (board) agreed that the conditions set forth in the variance had been met; the board noted that a copy of the original easement over Lot A was "produced showing allowance of petitioners to pass onto abutter's property."

*Hamburgers of N.Y., Inc.* v. *Board of Appeal of Billerica*, 454 Mass. 374, 383 (2009), quoting *DiGiovanni* v. *Board of Appeals of Rockport*, 19 Mass. App. Ct. 339, 343 (1985). We review the judge's determinations of law, including interpretations of zoning bylaws, de novo, *Shirley Wayside Ltd. Partnership* v. *Board of Appeals of Shirley*, 461 Mass. 469, 475 (2012), but we remain "highly deferential" to a board's interpretation of its own ordinances. *Wendy's Old Fashioned Hamburgers of N.Y., Inc.* v. *Board of Appeal of Billerica*, *supra*, quoting *Britton* v. *Zoning Bd. of Appeals of Gloucester*, 59 Mass. App. Ct. 68, 74 (2003).

We construe statutes "according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated." *Harvard Crimson, Inc.* v. *President & Fellows of Harvard College*, 445 Mass. 745, 749 (2006), quoting *Hanlon* v. *Rollins*, 286 Mass. 444, 447 (1934).

*Substantial reliance.* Our decision in *Cornell*, *supra* at 891 n.7, touched on, but was not required to resolve, the question whether a variance that is not recorded within the one-year statutory period prescribed by G. L. c. 40A, § 10, will become effective if its holders have substantially relied upon it within that period. See G. L. c. 40A, § 11. In this case, we are confronted squarely with the question not reached in *Cornell*, *supra*. We conclude that, in the unusual circumstances here, the Stefanidises' variance had become effective, notwithstanding the failure to record within the one-year period. We reach this conclusion where the holders of the variance were issued a building permit and took substantial steps within the one-year period in reliance upon an otherwise valid variance; there was no apparent harm to any interested parties, including the plaintiff, other than any harm resulting from the original, uncontested grant of the variance; and the variance was recorded less than two weeks after the expiration of the one-year period.

The Land Court judge determined that " 'substantial reliance' by a late-recording variance holder is sufficient to uphold a variance, at least (as here) one recorded within days after the

year expired." In *Cornell, supra* at 891, we interpreted G. L. c. 40A, §§ 10 and 11, as requiring both timely recording and exercise of the rights granted by a variance to prevent its lapse. The holder of the variance in that case had neither exercised the variance nor recorded it, nearly two years after it had been issued. Affirming the conclusion of the Land Court judge that the variance had never taken effect, we stated that "the variance could not become operative, and by implication, could not be exercised, until it was recorded."[10] *Id.* However, while noting that "at the very least, [the variance holder] should have recorded the variance and obtained a building permit within one year of being granted the variance to prevent it from lapsing," *id.* at 894, we recognized that our decision did not "resolve all questions concerning timely exercise of a variance," *id.* at 894 n.9, and reserved consideration of whether "failure to record a variance may void a variance on which a variance holder has substantially relied." *Id.* at 891 n.7. See *McDermott* v. *Board of Appeals of Melrose*, 59 Mass. App. Ct. 457, 460-461 (2003) (special permit did not lapse for failure to record under G. L. c. 40A, § 11, where it was substantially used).

General Laws c. 40A, §§ 10 and 11, were both part of a comprehensive 1975 revision of G. L. c. 40A intended to rein in the abuse of discretion by local zoning boards, as well as to eliminate difficulties in the prior version such as the lack of a provision "for the loss of variance rights by the failure to exercise them, or a delay in doing so." See *Hunters Brook Realty Corp.* v. *Zoning Bd. of Appeals of Bourne*, 14 Mass. App. Ct. 76, 81 (1982); 1972 House Doc. No. 5009, at 62-63. The 1975 revi-

---

[10]We note that our decision in *Cornell* v. *Board of Appeals of Dracut*, 453 Mass. 888, 891 (2009), could be read as requiring variance holders to record their variances prior to exercising any of their rights thereunder. Under such a reading, even had the Stefanidises recorded the variance on the day before the expiration of the one-year lapse period, having obtained the building permit prior to recording, their variance would nonetheless have lapsed. Such a reading would not be justified. Although it is preferable to record a variance with the appropriate registry of deeds before exercising one's rights thereunder, and while recording may be required by a particular municipality as a prerequisite to the exercise of certain rights granted by a variance, as reflected in the city's administrative requirements, see note 5, *supra*, the language and intent of G. L. c. 40A, §§ 10 and 11, do not mandate that actions taken to exercise a variance, such as obtaining a building permit in good faith, must be undertaken only after the variance has been recorded.

sions imposed "standardized procedures for the administration . . . of municipal zoning laws." See St. 1975, c. 808, § 2A.

Prior to the 1975 revisions, variances did not expire and could be exercised years after they had been granted; because recording was required only for conditional variances, subsequent purchasers were likely to be unaware that a variance applied to abutting land. See G. L. c. 40A, § 18, as amended through St. 1971, c. 1018. See also St. 1975, c. 808, § 3. The lapse provision at issue here was intended to "eliminate to some degree the current confusion regarding status of land within municipalities." 1973 House Doc. No. 6200, at 20 (Department of Community Affairs interim report recommending revisions to 40A). The recording requirement in G. L. c. 40A, § 11, serves the same goal by requiring the existence of "reliable records regarding the status of land within a community." *Id.* at 25. It expanded the preexisting requirement that conditional variances and special permits be recorded, a provision that was introduced in 1960 in response to concerns that subsequent purchasers of properties that benefited from time-limited and conditional variances were being harmed by the unexpected expiration of such variances. See St. 1960, c. 326; Thirty-Fifth Report of the Judicial Council of Massachusetts, 44 Mass. L.Q. 4, 68-69 (1959). The legislative history of these statutes indicates that the purpose of requiring recording to prevent lapse is to ensure that recording occurs in a timely fashion and that subsequent purchasers and others with an interest in the status of the land have notice of the grant to a land owner of a limited right to deviate from the requirements of the zoning code.

The Land Court judge found that the Stefanidises acted in good faith to comply with the requirements of G. L. c. 40A, § 10, and recorded the variance immediately after their oversight in failing to record was brought to their attention, a mere eleven days after the expiration of the one-year period. The Stefanidises did not postpone recording in order to avoid community opposition or for other strategic reasons; the judge found that they simply forgot to record, and, when reminded to do so, they immediately rectified their omission. Nothing in the record suggests that anyone, including Grady, any other abutters, or any

potential purchasers, suffered prejudice as a consequence of this de minimis recording delay.

The judge concluded also that the Stefanidises substantially relied on the issuance of the variance. They obtained a building permit, took on significant debt to finance the building project, hired a specialist requested by the city, and began construction operations, all within a year of the grant of the variance. Cf. *Hogan* v. *Hayes*, 19 Mass. App. Ct. 399, 404 (1985) (actions that may constitute "exercis[ing]" variance include sale of lot). Contrast *Cornell, supra* at 892 (variance not exercised where variance holder neither obtained building permit nor conveyed lot).

Grady, whose condominium unit overlooked the driveway that the Stefanidises used to access Lot B, does not contest that she was notified of the Stefanidises' application for a variance, but did not appeal from its grant; she was likewise aware of the preliminary construction activities. The easement over Grady's driveway to Lot B was included in Grady's deed; it was the burden of this easement that Grady sought to escape. Cf. *Hogan* v. *Hayes, supra* (variance determined not to have lapsed, in part because plaintiffs' position was "intrinsically inequitable").

The board's decision to deny Grady's request to revoke the building permit did not derogate from the purpose and intent of the recording requirement of G. L. c. 40A, § 11. We agree, on the facts of this case, that the variance had become effective and had not lapsed.

*Judgment affirmed.*